*U.S. Department of Justice*

*United States Attorney
Eastern District of New York*

NMA/MMS/NIS  *271 Cadman Plaza East*
F. #2016R01322  *Brooklyn, New York 11201*

July 7, 2017

By ECF

The Honorable Brian M. Cogan
United States District Judge
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Carlos Martinez
             Criminal Docket No. 17-281 (BMC)

Dear Judge Cogan:

      The government respectfully submits this letter in response to the defendant's motion of July 6, 2017 appealing Magistrate Judge Go's decision to remand the defendant as a danger to the community and in further support of the government's motion to detain the defendant pending trial, which is attached as Exhibit A. As set forth below, the government has demonstrated by a preponderance of the evidence that the defendant is a risk of flight and at risk to obstruct justice and by clear and convincing evidence that he is a danger to the community, such that the defendant should continue to be detained pending trial.

      The defendant begins with the peculiar assertion that the charges in this case require the Court to presume that bail is appropriate. His argument is belied by the statutory text of the Bail Reform Act, see Title 18, United States Code, Section 3142, which Judge Go correctly summarized by stating, "[D]etention is warranted if there's a risk of flight and the Court so finds by a preponderance of the evidence or by clear and convincing evidence of dangerousness." See Exh. A. to Def.'s July 6, 2017 Ltr. ("Def.'s Ltr.") at 12. Section 3142 further directs a court considering whether there are conditions of release that can adequately assure the defendant's appearance or safeguard the community to evaluate: (1) the nature and circumstances of the offenses charged, including whether the offense is a crime of violence, (2) the weight of the evidence against the person, (3) the history and characteristics of the person, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

      First, as to the nature and circumstances of the crimes charged, the defendant argues that a mitigating condition is the defendant's removal from the Metropolitan

Detention Center ("MDC"). Assuming, <u>arguendo</u>, that the defendant's removal from the MDC is in fact mitigating in some way, that argument is irrelevant to the Court's consideration of the nature of the charges in that it is not a factor listed in Section 3142 and logically his removal from the MDC does not in any way counter the nature of the charged offenses. By contrast, the defendant's sustained course of conduct - that is, the repeated rape of an inmate in his care, which violated not only the law but also the oath he took as a law enforcement officer and the trust placed in him as a supervisor - is clear and convincing evidence of his dangerousness. The evidence adduced at trial will further establish that the defendant was a savvy predator, using a ruse to isolate the victim so that he could rape her, time and time again, and then intimidating her into silence.

Next, while the defendant has produced sureties willing to vouch for his character and assure his appearance, under the law a significant bail package cannot rebut a finding of dangerousness. As the Second Circuit held in <u>United States v. Millan</u>:

> Home detention and electronic monitoring at best elaborately replicate a detention facility without the confidence of security such a facility instills. If the government does not provide staff to monitor compliance extensively, protection of the community would be left largely to the word of [the defendants] that [they] will obey the conditions.

4 F.3d 1039, 1048-49 (2d Cir. 1993) (citations and internal quotations omitted). Here, the defendant has not even proffered a significant bail package, relying instead on the unsecured signatures of his family and friends, one of whom submitted a false, or at best, misleading, affidavit to the Court in connection with this proceeding, as described further below.

Indeed, the "model existence" portrayed by the defendant in his submission ignores his significant history of abusive conduct toward women. As far back as 1995, a female inmate (the "female inmate") at the MDC reported to the Federal Bureau of Investigation ("FBI") that the defendant had raped her, describing means similar to those he used in this case, specifically that the defendant attacked the female inmate during her cleaning duty.[1] The female inmate further stated that for weeks after the incident, the defendant continued to pursue her until he sexually assaulted her a second time. The female inmate also reported that after the defendant raped her, he threatened her, stating that if she told anyone about his conduct, she would receive additional jail time. He engaged in similar behavior to ensure the silence of Jane Doe, the victim in this case. The female inmate further stated that the defendant instructed her not to tell anyone what happened because there were no cameras to prove her version of events and that because he was a federal officer, it would

---

[1] At this stage of the proceeding, the government may proceed by proffer. <u>See</u> <u>United States v. LaFontaine</u>, 210 F.3d 125, 130-31 (2d Cir. 2000) (government entitled to proceed by proffer in detention hearings).

2

be his word against hers.[2]  Even if these allegations were the only incident in the defendant's history – which they are not – standing alone, they provide clear and convincing evidence of the defendant's dangerousness and his willingness to use his position as a law enforcement officer and other threats to silence his victims and avoid prosecution.

       A review of other records reveals that the defendant has been the subject of a number of complaints involving threats to females and inappropriate abuse of his position.  For example, in December 2012, a female individual (the "female individual") reported that the defendant verbally assaulted her outside her residence, stating, "What the fuck are you looking at?  Do something about it."  When the female individual responded with a retort of her own, the defendant jumped over the gate to her residence and said, "I'll take your eyes out of your head."  The female individual told the defendant that she intended to call the police, at which point the defendant stated, "Go ahead.  I'm a federal employee."

       In 2015, a fellow correctional officer (the "CO") filed a complaint against the defendant alleging that he asked her what time another female CO had arrived at work, and when the CO said she didn't know, directed the CO to write a memorandum that the other female CO had arrived at a specific time (presumably late for work).  The defendant told the CO, in sum and substance, "I want a memo stating the time [the other female CO] came to work because that bitch got nasty with me."  When the CO refused to write the false memorandum as directed, the defendant told her, in sum and substance, "These officers here are pieces of shit.  They don't care about anyone but themselves.  How do you think I feel this bitch disrespected me and the Captain tells me to leave it alone?"

       Finally, in its prior submission the government described the defendant's 2016 physical assault of a female motorist, who was a stranger to the defendant, during which the defendant punched the victim twice in the face and then fled the scene.  See Gov't Det. Mot. at 10.  This sustained course of conduct demonstrates the defendant's dangerousness, his willingness to use violence and aggression toward vulnerable victims, including individuals under his supervision and charge, and the need to protect the community, including Jane Doe, from the defendant by continuing to detain him pending trial.

       The defendant attempts to counter the compelling facts of the 2016 road rage incident by pointing to the disposition of the case and an affidavit submitted by his aunt, who claimed to be present during the incident and is also a proposed surety.  See Def.'s Ltr. at Exh. C, p. 1 (describing the defendant as a "brother and a son") and Exh. D, respectively.  However, as the Court is well aware, cases are resolved for a variety of reasons and often the disposition of charges does not by itself communicate the severity of the underlying facts.  On the other hand, photographs taken of the victim and the victim's car shortly after the incident show the victim's swollen face, smashed rear view mirror and damaged windshield.  In addition, the defendant's own statements to law enforcement at the time contradict his

---

[2] Although the female inmate provided this information to the FBI, the defendant was not prosecuted for it.

3

aunt's sworn affidavit.  For example, at the time of the incident, the defendant stated that he "tapped [the victim's] jaw with his hands [and] punched her side view mirror, breaking it" and cutting his hand, facts notably absent from his aunt's affidavit.  Copies of photographs of the victim's face and the defendant's statement are attached as Exhibit B.[3]  Additionally, the undersigned attorneys have spoken with the Assistant District Attorney assigned to the case who recalled meeting with the defendant on February 24, 2017, at which time the defendant admitted that he had punched the female driver in the face and expressed no remorse for doing so.  In fact, he minimized his conduct by stating, in sum and substance, that if he had used his "full force," he would have "knocked her out."

> The defendant's submission of a false and misleading affidavit to this Court is perhaps the best evidence of his dangerousness and is another basis upon which the Court may rely to detain him pending trial.  Under Section 3142(f)(2), detention is appropriate if the Court finds by a preponderance of the evidence that there is a serious risk that [the defendant] will obstruct or attempt to obstruct justice.  See also United States v. Madoff, 586 F. Supp. 2d 240, 247 (S.D.N.Y. 2009) (preponderance of evidence standard applies to determination of both risk of flight and risk of obstruction of justice).  Here, the submission of a false and/or misleading statement in furtherance of his bail application – on its own – demonstrates by a preponderance of the evidence the defendant's willingness to obstruct justice.  Additionally, he threatened both Jane Doe and the female inmate with additional jail time should they come forward about the serious sexual abuse they each suffered at his hands.  These threats are further evidence of his willingness to intimidate potential witnesses to his criminal conduct to evade prosecution.

> Taken all together, the circumstances of the charged crimes and the defendant's history and characteristics demonstrate by clear and convincing evidence that the defendant is a danger to the community, including the victim in this case.  Moreover, the defendant faces a potential sentence of life imprisonment if convicted at trial.  This sentence, when considered together with his willingness to violate his oath as a law enforcement officer to engage in these heinous crimes, demonstrates by a preponderance of the evidence that he is also a risk of flight.  Finally, his submission of a false and/or misleading affidavit and other threats to victims demonstrate by a preponderance of the evidence that he is likely to attempt to obstruct justice.

***

---

[3] The government respectfully requests permission to file the photographs of the victim's face by hand and under seal to protect the victim's privacy.

For the foregoing reasons, the defendant's motion should be denied.

Respectfully submitted,

BRIDGET M. ROHDE
Acting United States Attorney

By:      /s/ Nicole M. Argentieri
       Nicole M. Argentieri
       Marisa M. Seifan
       Nadia I. Shihata
       Assistant U.S. Attorneys
       (718) 254-7000

Attachments

cc:    Zoe Dolan, Esq. (by ECF and email) (w/attachments)
      Clerk of Court (BMC) (by ECF)