22-902-cr (L)
United States v. Martinez

# In the
# United States Court of Appeals
## For the Second Circuit

_____

August Term, 2023
Nos. 22-902-cr (L), 22-1136-cr (XAP)

UNITED STATES,
*Appellee-Cross-Appellant,*

*v.*

CARLOS MARTINEZ,
*Defendant-Appellant-Cross-Appellee.*

_____

On Appeal from a Judgment of the United States District Court for
the Eastern District of New York.

_____

ARGUED: JANUARY 8, 2024
DECIDED: JULY 30, 2024

Before:  LYNCH, NARDINI, AND MERRIAM, *Circuit Judges.*

_____

Over the course of two trials, juries returned guilty verdicts
against Carlos Martinez, a former federal prison guard, on various
charges based on his repeated rape of an inmate.  Martinez was
sentenced to an aggregate term of ten years in prison by the United

CERTIFIED COPY ISSUED ON 07/30/2024

States District Court for the Eastern District of New York (Edward R. Korman, *District Judge*).  Martinez challenges the sufficiency of the evidence underlying two of the counts, which charged him with aggravated sexual abuse and deprivation of civil rights, both premised on his using force to commit one particular rape.  We reject the challenge, because the jury was entitled to credit the victim's testimony that Martinez physically restrained her during that rape. Martinez argues that his acquittals on other counts reveal that the jury must have completely rejected the victim's testimony, but it is well established that a defendant cannot rely on inconsistent verdicts to impugn a conviction.

The government cross-appeals Martinez's ten-year sentence as procedurally and substantively unreasonable.  We agree.  The district court committed procedural error by relying on certain clearly erroneous factual findings that were foreclosed by the jury's guilty verdicts, or that it mistakenly believed were dictated by the jury's acquittals on other counts; mistakenly treating Martinez's convictions for committing sexual abuse through threats or fear as legally equivalent to committing sexual abuse of a ward, for which a victim's consent is immaterial; and failing to effectively sentence him based on all of his convictions.   The sentence was also substantively unreasonable because the district court gave dramatically insufficient weight to the seriousness of the full range of Martinez's offenses, and impermissibly gave weight to its residual doubts about the jury's guilty verdicts as a mitigating factor.  We therefore AFFIRM the judgment of conviction and REMAND for resentencing consistent with this opinion.

—————————————

RACHEL A. SHANIES (Samuel P. Nitze, David C. James, *on the brief*), Assistant United States Attorneys, *for* Breon Peace, United

2

States Attorney for the Eastern District of New York, Brooklyn, NY, *for Appellee-Cross-Appellant*.

ANTHONY L. RICCO (Steven Z. Legon, *on the brief*), New York, NY, *for Defendant-Appellant-Cross-Appellee.*

———————————————

WILLIAM J. NARDINI, *Circuit Judge*:

Defendant-Appellant-Cross-Appellee Carlos Martinez, a former federal prison guard, was convicted after two jury trials in the United States District Court for the Eastern District of New York (Edward R. Korman, *District Judge*) of a number of charges stemming from his repeated rape of an inmate, whom the parties refer to as "Maria," at the Metropolitan Detention Center ("MDC") in Brooklyn, New York.  At both trials, Maria testified that Martinez raped her on five occasions while she was assigned to clean his office on weekends when that area was largely deserted.  She testified that Martinez repeatedly sexually assaulted her by force (by physically holding her down) and threats and fear (by, for example, threatening to send her

3

to a special housing unit ("SHU") and warning her that fighting back would result in charges for assaulting an officer).

The jury at Martinez's first trial found him guilty of five counts of sexual abuse of a ward, in violation of 18 U.S.C. § 2243(b)—one count for each rape.  It also found him guilty of a number of other counts which were later vacated for reasons that are not at issue in the present appeal.  At a second trial, Martinez was retried on fifteen counts arising out of the five rapes.  As to each rape, Martinez was charged with sexual abuse by threats or fear in violation of 18 U.S.C. § 2242(1); depriving Maria of her civil rights in violation of 18 U.S.C. § 242; and aggravated sexual abuse in violation of 18 U.S.C. § 2241(a)(1).  The jury convicted Martinez of five counts of sexual abuse by threats or fear, 18 U.S.C. § 2242(1).  The jury also convicted Martinez of depriving Maria of her civil rights, 18 U.S.C. § 242, and of aggravated sexual abuse, 18 U.S.C. § 2241(a)(1), but only as to the

second of the five charged rapes; it acquitted him on those counts as to the other four incidents.

At sentencing, the district court expressed doubts about Maria's testimony and later explained in its written statement of reasons that it disagreed with the second jury's guilty verdicts on the five counts of sexual abuse through threats or fear—despite having previously denied Martinez's motions for acquittal. The court also made several remarks suggesting that the second jury had not credited Maria's testimony, even though the jury had returned guilty verdicts on at least one count relating to each of the five charged rapes. It additionally described Martinez as "not a violent criminal," Gov't App'x 226, even though the jury had found beyond a reasonable doubt that, on one occasion, he had forcibly raped Maria. At bottom, the court appeared to believe Martinez's defense that he and Maria had engaged in consensual sex, a version of events necessarily foreclosed by the guilty verdicts. The district court

ultimately imposed a prison sentence of ten years, a dramatic variance below the advisory Guidelines range of life imprisonment.

Martinez now challenges the sufficiency of the evidence underlying his two convictions premised on using force to commit the second charged rape. We reject the insufficiency claim, because the jury was entitled to credit Maria's testimony that Martinez physically restrained her to carry out that particular instance of sexual abuse. Martinez argues that his acquittals on some counts reveal that the jury must have completely rejected the victim's testimony, but it is well established that a defendant cannot rely on inconsistent verdicts to impugn a conviction, and, in any event, the jury's guilty verdicts decisively refute any contention that the jury entirely rejected that testimony.

The government cross-appeals Martinez's ten-year sentence as procedurally and substantively unreasonable. We agree. The district court committed a number of procedural errors: It relied on certain

clearly erroneous factual findings that were foreclosed by the jury's guilty verdicts, or that it mistakenly believed were dictated by the jury's acquittals on other counts.  It mistakenly treated Martinez's convictions for committing sexual abuse through threats or fear as legally equivalent to committing sexual abuse of a ward, despite the fact that the former offense, unlike the latter, requires the sexual contact to have been without the victim's consent.  And it failed to effectively sentence him based on all of his convictions.  The sentence was also substantively unreasonable because the district court gave dramatically insufficient weight to the seriousness of the full range of Martinez's offenses, and impermissibly gave weight to its residual doubts about the jury's guilty verdicts as a mitigating factor.   We therefore AFFIRM the judgment of conviction and REMAND for resentencing consistent with this opinion.

## I.     Background

Martinez, a former Federal Bureau of Prisons ("BOP") Lieutenant, was indicted in May 2017 on twenty counts that charged

him with repeatedly raping Maria, an inmate in his care at MDC, between December 2015 and April 2016.  The charges stemmed from five sexual assaults—two rapes (one oral, one vaginal) on December 13, 2015, and three subsequent vaginal rapes between December 2015 and April 2016.  For each assault, Martinez was charged with four counts: deprivation of civil rights of an inmate, in violation of 18 U.S.C. § 242, aggravated sexual abuse of an inmate by force, in violation of 18 U.S.C. § 2241(a)(1), sexual abuse of an inmate by threats or fear, in violation of 18 U.S.C. § 2242(1), and sexual abuse of a ward, in violation of 18 U.S.C. § 2243(b).

At an initial trial in January 2018, a jury found Martinez guilty on all twenty counts.  The government later disclosed that it had failed to provide Martinez with the interview memorandum of an MDC inmate, which summarized the inmate's statement that Maria had told her "that something was going on between [Maria] and Lieutenant Martinez," that Maria had declined the declarant's request

to join Maria in cleaning Martinez's office on one occasion because Maria said she "was having relations with" Martinez, and that Maria had declined a pap smear due to her sexual relationship with Martinez.  Gov't App'x 562.  The district court concluded that such evidence was exculpatory and material to whether Maria had consented to a sexual relationship with Martinez and accordingly, pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), granted Martinez's motion for a new trial on all counts except the five counts for sexual abuse of a ward, as that offense prohibits sexual acts between an inmate and a guard regardless of the inmate's consent to such acts. *See* 18 U.S.C. 18 U.S.C. § 2243(b).  The district court's *Brady* ruling is not at issue in this appeal.

At a second jury trial in February 2020, Martinez was re-tried on the fifteen previously vacated counts of conviction under 18 U.S.C. § 242 (five counts of deprivation of civil rights of an inmate), 18 U.S.C. § 2241(a)(1) (five counts of aggravated sexual abuse of an inmate), and

18 U.S.C. § 2242(1) (five counts of sexual abuse of an inmate by threats or fear). At trial, Maria testified as follows.[1]

While housed at MDC, Maria worked as a cleaner. She was assigned to clean the second floor, which housed the lieutenants' office, where Martinez worked. Whenever Maria was called to clean, she was escorted to the second floor by an officer, who then left her unsupervised while she completed her work. In August or September 2015, Martinez began requesting that Maria clean his office, typically on Fridays, Saturdays, or Sundays, when there were fewer staff at MDC.

While alone with Maria in his office during her cleaning sessions, Martinez made sexual overtures that made Maria uncomfortable, including asking her how she "satisf[ied] [her] body," which she understood to refer to "orgasm[s]," and telling her that she "should touch [her]self in his name." Gov't App'x 43–44. Maria tried

---

[1] Maria provided substantially similar testimony at the first trial.

to rebuff Martinez by replying that she was married, but he retorted that her husband never came to visit her.  Martinez also told Maria that another inmate, Jenny, was about to be released from MDC custody because "Jenny didn't say anything," *id.* 45, which Maria understood to mean that Jenny "remained silent . . . about what had happened with the officer," *id.* 61.

Maria did not report Martinez's inappropriate sexual comments to prison officials because she "didn't want any problems." *Id.* 45–46.  She also continued to clean Martinez's office when called to do so, because she understood that she could not refuse and that if she did, she would be placed in the SHU, "a small . . . punishment room." *Id.* 47.  Maria did, however, ask to switch jobs, but her request was denied.

On December 13, 2015,[2] Maria was summoned to Martinez's office to clean.  Upon arrival, she retrieved cleaning supplies from under a desk.  While she was crouched facing the wall, Martinez exposed his erect penis through the zipper of his pants, grabbed

---

[2] Maria testified that this first rape occurred in October 2015.  However, the indictment specifies that the first rape was on December 13, 2015, and the government noted in its memorandum of law in opposition to a post-trial motion that it

> proved [that] the date of this incident [was December 13, 2015,] at trial through a combination of evidence. Multiple witnesses, including Maria, testified that the incident occurred the day Melva Vasquez was able to have a visit for the first time in six months, following the lifting of a disciplinary sanction she received.  The trial evidence established that the incident for which Melva received a disciplinary sanction took place on May 23, 2015, that she was first housed in the Special Housing Unit ("SHU") for two weeks from May 23, 2015 to June 3, 2015 and then lost her visiting privileges for 180 days for "unauthorized physical contact with female," starting June 8, 2015 until December 4, 2015.  Melva testified that, after the visitor sanction was lifted, a visitor came to the MDC to visit her one day, but Melva was not authorized to see her so the visitor returned the following day and visited with Melva.  Visitor records showed a visitor was logged into the MDC system to see Melva on December 12 and 13, 2015; the last visitor logged for Melva prior to that was on June 6, 2015.

Gov't App'x 444 n.3 (citations omitted).  Viewing the evidence in the light most favorable to the jury verdict, as we must, *see United States v. Osuba*, 67 F.4th 56, 61 (2d Cir. 2023), we refer to the incident as having occurred on December 13, 2015, notwithstanding Maria's testimony.  In any event, the discrepancy between dates is not material to the resolution of this appeal.

Maria's head, and pushed it toward him, forcing her to perform oral sex while she tried to push away from him.  Maria said that she "didn't want any problems," *id.* 53, was crying, and told "him to leave [her] alone," *id.* 54.  Martinez, who was much larger and stronger than Maria, then "stood [her] up," "put [her chest down] . . . on the desk," "forcibly unbuttoned" her pants and pulled down her pants and underwear, and "penetrated" her vagina with his penis without a condom while "grabb[ing] [her] by the arm" to "keep[] [her] down on the desk" until he ejaculated into her.  *Id.* 54–58.  Throughout the assault, Maria was scared, crying, and bleeding, but Martinez "didn't care."  *Id.* 56.  Although she did not want to have oral or vaginal sex with Martinez, she felt as though she had no other choice.

Following these initial rapes, Martinez told Maria not to "talk to anybody[] because [she] was going to have problems[,] . . . implying that [she] was going to go to the SHU if [she] spoke to anybody" or that "[t]hey would take away [her] good time"

credits, meaning that she would have "to do more time in jail." *Id.* 60–61.

When Maria returned to her cell block, she disclosed to three other inmates—Kiara Maldonado, Danilda Osoria, and Melva Vasquez—that "Martinez had penetrated" her, which had caused vaginal bleeding. *Id.* 67. Maria went inside the bathroom to speak to Maldonado because Martinez "could see [her in] the units," which worried her because "[h]e told [her] not to tell anybody." *Id.* 65. In the bathroom, Maria told Maldonado "[t]hat Martinez had penetrated [her]," "didn't care that [she] was bleeding," and "just went on." *Id.* 64. Osoria gave Maria a sanitary napkin to help with her bleeding and tried to calm her down, as Maria was crying.

Later that evening, Martinez brought Maria an emergency contraceptive pill. Maria ingested the pill and had Osoria read the packaging to her before flushing the packaging down the toilet,

because she was afraid to be caught with contraband and risk being placed in the SHU.

The trial testimony of Maldonado, Osoria, and Vasquez substantially corroborated Maria's testimony about the first time Martinez vaginally raped her.  They testified that when Maria returned from cleaning that day, she was crying and appeared "frenzied" and "agitated," *id.* 288, "nervous," *id.* 290, and "freaked out," *id.* 322.  They each testified that Maria told them that Martinez had exposed his penis while she was crouched to get cleaning supplies and had penetrated her, that she was vaginally bleeding, and that Martinez later brought her an emergency contraceptive pill. Maldonado testified that Maria asked her not to tell anyone about what happened because Martinez had threatened Maria that she could be sent to the SHU.  Vasquez testified that Maria informed her of Martinez's threats that if anyone discovered what had happened,

Maria "could have problems" and could lose "some of her good time so she would have to spend more time in jail." *Id.* 356.

Maria testified that after the first two rapes, Martinez vaginally raped her in his office three more times between December 2015 and April 2016.  During each of those subsequent rapes, Martinez used force by "grabbing [her], twisting [her] arm, . . . grabbing [her] by [her] hair, [and] however [else] he could." *Id.* 79–80.  During each rape, Maria was "scared . . . [t]hat [she] was going to have to spend more time in jail" and "[t]hat [she] was going to end up in the SHU." *Id.* 80.  At no point did she consent to sexual relations with Martinez.

Maria made numerous unsuccessful efforts to prevent Martinez from raping her, including asking to switch jobs, delaying going to his office to clean, and asking a male friend to visit her at MDC and kiss her so that Martinez would believe that she was not single.  On one occasion, Maria slapped Martinez in the head after he tried to grab her.  Martinez met her attempt to fight back by warning

her that she could go to prison for five years for assaulting an officer, and then proceeding to vaginally rape her.  She considered physically fighting back on other occasions, but was too fearful.

Martinez testified in his own defense at the second trial.  He admitted to having sex with Maria in his office on certain occasions but maintained that the encounters were consensual.[3]

Following both the government's case-in-chief and the defense case, Martinez moved for a judgment of acquittal on all counts pursuant to Federal Rule of Criminal Procedure 29.  The district court orally denied both motions.

The jury returned general guilty verdicts on seven of the fifteen remaining counts[4]:

---

[3] During the first trial, Martinez did not testify and maintained his innocence with respect to the five counts of sexual abuse of a ward, advancing the theory that he had never engaged in sexual contact with Maria whatsoever.  By the time of Martinez's testimony at the second trial, the district court had declined to vacate his earlier convictions for sexual abuse of a ward.  Martinez does not challenge those convictions on this appeal.

[4] We refer to these counts as renumbered in the Redacted Indictment used during the second trial.

- With respect to the December 13, 2015, oral rape: raping Maria by threats or fear (Count Three);

- With respect to the December 13, 2015, vaginal rape: depriving Maria of her civil rights (Count Four), aggravated sexual abuse, namely raping Maria by force (Count Five), and raping Maria by threats or fear (Count Six); and

- With respect to the three vaginal rapes between December 13, 2015, and April 2016: raping Maria by threats or fear (Counts Nine, Twelve, and Fifteen).

The jury acquitted Martinez of the remaining eight counts: deprivation of civil rights and aggravated sexual abuse (forcible rape) with respect to the oral rape on December 13, 2015, and the three vaginal rapes that occurred after December 13, 2015.

Prior to sentencing, the U.S. Probation Office calculated that Martinez's total offense level under the U.S. Sentencing Guidelines was 46 and his criminal history category was I, yielding an advisory

range of life imprisonment.  Although it did not explicitly say as much during sentencing, the district court adopted the Probation Office's Guidelines calculations in the written judgment.  The government asked the court to sentence Martinez to more than 20 years in prison, whereas the defense asked for time served or, at most, 5 years.  The district court varied downward from the advisory Guidelines range to impose concurrent terms of ten years of imprisonment on each count.

During the sentencing hearing, the district court made several remarks suggesting that it accepted the defense's theory that Martinez and Maria had engaged in consensual sex in each of the incidents charged, despite the jury's verdicts to the contrary.  The court also indicated that it did not believe that Maria was a credible witness and that it would effectively disregard the jury's guilty verdicts on certain counts.

The district court also took a narrow view of Maria's testimony. It noted that it "[did]n't believe" that Maria submitted to the sexual contact "because she was threatened or because of fear" and that Maria "didn't testify . . . that the reason for her consent was fear or force."  Gov't App'x 200.  Instead, the court asserted that Maria testified only that Martinez "just used force each time in order to have sexual relations with her.  It wasn't caused by anything other than his physical strength and his ability to rape her."  *Id.*; *see also id.* 231–32, 238.

More broadly, the court opined that "the jury didn't believe" Maria's testimony that Martinez forcibly raped her, *id.* 238; *see id.* 206 ("[The jury] rejected her testimony."), and indicated that the court held personal doubts about her veracity, *see id.* 215 ("[T]hat's one of the many aspects of Maria's testimony that I find troubling."); *id.* 217 (opining that "people who are in jail[, like Maria,] . . . are not . . . of the highest moral character and . . . have problems"); *id.* 218 ("I am

concerned about whether false testimony was given by the complainant . . . ."); *id.* 227 ("I'm concerned about [Maria's] veracity as a witness."); *id.* 240 (opining that Maria's testimony "sounded awfully" similar to the story she told about being sex trafficked when applying for a visa).

Even though the district court said at one point that it would "have to accept the jury's verdict despite [its] own qualms about [Maria's] credibility," *id.* 221, it also explained: "[F]or the purpose of sentencing, I'm looking at this as a one count indictment, one count conviction, however I have to record it on whatever sheet that the Sentencing Commission makes me file as their bookkeeper." *Id.* 201–02. The court did not clearly explain which of Martinez's multiple counts of conviction was the "one count" on which it would premise his sentence, but it did make clear that it was discounting (if not wholly disregarding) the convictions for sexual abuse by threats or fear.

At one point, the court seemed to suggest that the threats-or-fear counts were irrelevant because the Guidelines calculation was driven by the more serious convictions for forcible rape—which implied that perhaps the court based its sentence principally on the jury's convictions for forcible rape (although they involved not "one count," but rather two counts relating to a single episode).  But at another point, the court seemed to suggest that it was also disregarding the forcible rape convictions and selecting a sentence based solely on Martinez's convictions at the first trial for sexual abuse of a ward—which did not require his sexual encounters with Maria to have been nonconsensual.  *See id.* 226 ("He's not a violent criminal. . . . But you know, to what extent do I impose a sentence that would be imposed if it was simply purely consensual and it was simply a ward situation.").  The court appeared to base that decision on its belief that Martinez's sexual encounters with Maria were in fact consensual, *see id.*, as well as on its view that, because Martinez "ha[d]

22

the ability to cause [Maria] harm" by virtue of their respective roles as guard and inmate, *id.* 203, his convictions for sexual abuse by threat or fear were duplicative of his convictions for sexual abuse of a ward.

The district court said other things during the sentencing hearing that seemed to brush aside the jury's guilty verdicts, including that Martinez's crimes were serious, but only "assuming [they were] committed," *id.* 221, and that Martinez was "not a violent criminal" and therefore would "not . . . go out and rape anyone if he's released," *id.* 226.

After sentencing, the district court instructed the Probation Office to edit the Presentence Investigation Report ("PSR") to include the following unusual language (added as a new paragraph 22), purporting to reflect the jury's conclusion that Maria's testimony was not credible:

> Per the Court's directive, the presentence report is amended to reflect particular findings made by the jury in the instant case. Specifically, during the trial, the jury found many aspects of the victim's testimony about the

circumstances under which she had sexual intercourse with the defendant not credible.  Although the victim testified that on at least four separate occasions she was forcibly raped, the jury rejected her testimony as to all of those occasions except one, which occurred on December 13, 2015.  Furthermore, while the jury did convict the defendant on all counts of sexual abuse, the elements of which required that the victim's consent was induced by threats or fear, the victim did not testify that she consented to have sexual intercourse with the defendant because of threats or fear.  She instead testified that each occasion was brought about by force.

*Id.* 537.  The district court issued its judgment and statement of reasons three days after the amended PSR was issued.  The statement of reasons indicated that the court varied below the Guidelines range due to Martinez's history and characteristics—specifically, his age, charitable service and good works, and military service.  It also provided the following explanation for the court's sentence:

As the jury did for the reasons I stated on the record, I found many aspects of the victim's testimony about the circumstances under which she had sexual intercourse with the defendant not credible, and I have considered this in fashioning the ultimate sentence in this case. Indeed, the victim testified that on at least four separate occasions, she was forcibly raped, but the jury rejected her testimony as to all of those occasions except . . . on

24

> December 13, 2015.  This rejection is clearly reflected in
> the jury's not guilty verdicts on counts 1r, 2r, 7r, 8r, 10r,
> 11r, 13r, and 14r[.] . . .  While the jury did convict the
> defendant on all counts of sexual abuse, the elements of
> which required that the victim's consent was induced by
> threats or fear, the victim did not testify that she
> consented to have sexual intercourse with the defendant
> because of threats or fear—instead she testified that each
> occasion was brought about by force.  Indeed, I should
> have granted the judgment of acquittal, which was made
> during trial, as to all counts of sexual abuse . . . .

*Id.* 569–70.

The government objected to the revised PSR in a sealed letter.
It pointed out that "the jury made no particularized findings
whatsoever and certainly not any regarding the credibility of the
victim or that amounted to the jury's 'rejection' of her testimony."  *Id.*
560.  The government also disputed the court's assertion "that 'the
victim did not testify that she consented to have sexual intercourse
with the defendant because of threats or fear,'" pointing to places in
Maria's testimony where she did so.  *Id.* Martinez filed a letter
opposing the government's objections, contending that "[t]he
language in the revised PSR accurately reflects the trial testimony and

the jury findings in this case." *Id.* 572.  The district court took no action in response to the letters.

Martinez now appeals two of his convictions on sufficiency grounds, and the government cross-appeals Martinez's sentence as procedurally and substantively unreasonable.

## II.    Discussion

### A. Sufficiency of the Evidence

Martinez challenges the sufficiency of the evidence underlying only two of his convictions, both arising from the vaginal rape on December 13, 2015: Count Four, deprivation of civil rights, in violation of 18 U.S.C. § 242; and Count Five, aggravated sexual abuse, in violation of 18 U.S.C. § 2241(a)(1).  He does not challenge his convictions, for all five episodes, for sexual abuse through threats or fear and for sexual abuse of a ward.  We review *de novo* a defendant's challenge to his convictions based on sufficiency of the evidence.  *See United States v. Krivoi*, 80 F.4th 142, 155 (2d Cir. 2023).  For the reasons

that follow, we affirm Martinez's convictions on both challenged counts.

Jury verdicts are entitled to "strong deference" in our criminal justice system, and so when reviewing a defendant's insufficiency challenge to a guilty verdict, "we must 'draw all permissible inferences . . . and resolve all issues of credibility in favor of the jury's verdict.'" *United States v. Osuba*, 67 F.4th 56, 61 (2d Cir. 2023) (quoting *United States v. Willis*, 14 F.4th 170, 181 (2d Cir. 2021)), *cert. denied,* 144 S. Ct. 577 (2024). We must affirm a conviction when "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Accordingly, "a defendant 'mounting . . . a [sufficiency] challenge bears a heavy burden.'" *Krivoi*, 80 F.4th at 155 (quoting *United States v. Harvey*, 746 F.3d 87, 89 (2d Cir. 2014)).

To convict on Counts Four and Five, the jury had to conclude beyond a reasonable doubt that Martinez used force against Maria.

Count Five, which charged Martinez with aggravated sexual abuse in violation of 18 U.S.C. § 2241(a)(1), makes it unlawful for anyone "in a Federal prison" to "knowingly cause[] another person to engage in a sexual act . . . by using force against that other person."  The district court instructed the jury that to find Martinez guilty of that count, it had to find that (among other things) Martinez "caused [Maria] to engage in a sexual act . . . by using force against [her]," Gov't App'x 395, and defined "use of force" as "the use of such physical force as is required to overcome, restrain or injure a person," *id.* 396. [5] Meanwhile, Count Four charged Martinez with a violation of 18 U.S.C. § 242, which makes it unlawful for anyone "under color of any law . . . [to] willfully subject[] any person . . . to the deprivation of any

---

[5] Defense counsel did not object to the jury instructions before the district court, so we review any such challenges on appeal for plain error, *see United States v. Grote*, 961 F.3d 105, 114 (2d Cir. 2020).  To the extent Martinez now challenges the district court's instruction on the definition of "force," that instruction was not plainly erroneous, *see United States v. Lauck*, 905 F.2d 15, 17–18 (2d Cir. 1990) (holding that "force" as used in 18 U.S.C. § 2244(a)(1) means "the use of such physical force as is sufficient to overcome, restrain, or injure a person").

rights, privileges, or immunities secured or protected by the Constitution or laws of the United States."  The district court instructed the jury that in order to find Martinez guilty of this count, it must find that, among other things, his "conduct resulted in aggravated sexual abuse of Maria."  Gov't App'x 391.  Accordingly, the district court instructed the jury that, in the circumstances presented by this case, Count Four required the same findings regarding force as Count Five.[6]

Martinez argues that the evidence was insufficient to establish that he used force.  We are unpersuaded.  Maria's trial testimony amply supports the jury's finding that Martinez used force to "overcome" and "restrain" her while vaginally penetrating her on December 13, 2015.  Maria testified that Martinez, a man of superior size and strength, pulled her up from her position crouched on the ground, pinned her chest down to a desk, forcibly removed her pants

---

[6] Martinez does not challenge the district court's instruction in this respect.

and underwear, and held down her arm while he penetrated her against her will, causing vaginal bleeding. Her testimony alone, which the jury was entitled to credit, is enough to defeat Martinez's sufficiency challenges as to both Counts Four and Five. *See United States v. Lauck*, 905 F.2d 15, 17–18 (2d Cir. 1990) (upholding a conviction for aggravated sexual abuse under § 2244(a)(1) where the perpetrator used force by putting his arm around the victim to prevent her from walking, backing her into a corner, holding her there to prevent her escape, and holding her head forcibly with his hands while sexually assaulting her, because "restraint upon the other person that was sufficient that the other person could not escape the sexual contact . . . is sufficient force to violate section 2244(a)(1)").

Martinez argues that these two convictions should nevertheless be vacated because "there is no rational explanation for the verdicts of not guilty based upon the same conduct"—*i.e.*, Martinez's acquittal on the aggravated sexual abuse counts as to the other three instances

of vaginal rape (when Maria testified that Martinez used similar force) and one instance of oral rape that occurred on the same day— except that the "jury rejected the testimony of Maria." Appellant's Br. at 29. We disagree, for two reasons.

First, even if Martinez could establish that the verdicts were mutually irreconcilable, his argument would fail. It is well established that "a criminal defendant convicted by a jury on one count [cannot] attack that conviction because it was inconsistent with the jury's verdict of acquittal on another count." *United States v. Powell*, 469 U.S. 57, 58 (1984) (citing *Dunn v. United States*, 284 U.S. 390 (1932)). That is because "[a] court knows only what the jury's verdicts were, not what the jury found, and it is not within the province of the court to attempt to determine the reason or reasons for verdicts that are inconsistent." *United States v. Acosta*, 17 F.3d 538, 546 (2d Cir. 1994). Put simply, a court cannot infer why a jury has returned a mixed verdict. "[T]he jury, though presumed to follow the

31

instructions of the trial court, may make its ultimate decisions for impermissible reasons, such as mistake, compromise, or lenity, but its power to do so is unreviewable . . . ." *Id.* at 545 (internal quotation marks and citations omitted).

Moreover, courts are not only incapable of reviewing why a jury reached an inconsistent verdict, but also are in no position to conclude which of the verdicts were wrong. As the Supreme Court has explained, when "truly inconsistent verdicts have been reached, . . . it is unclear whose ox has been gored;" that is, whether it was the acquittals or the convictions that were erroneously returned. *Powell*, 469 U.S. at 64–65. Jury deliberations are, by design, a black box. Except in the rarest circumstances, a reviewing court has neither the authority nor the ability to peer inside the jury's deliberations.[7]

---

[7] We have explained that a trial judge may inquire into allegations of jury misconduct only when there is "clear, strong, substantial and incontrovertible evidence, that a specific, nonspeculative impropriety has occurred which could have prejudiced the trial of a defendant." *United States v. Sabhnani*, 599 F.3d 215, 250 (2d Cir. 2010) (quoting *United States v. Vitale*, 459 F.3d 190, 197 (2d Cir. 2006)).

Given such uncertainty, and because such inconsistencies "often are a product of jury lenity," a defendant may not appeal his conviction on one count based on his acquittal on some other count. *Id.* at 65. We therefore look only to the evidence presented to the jury, not to its verdicts on other counts, when assessing the factual sufficiency of a conviction.

Second, in any event, this case does not present an example of truly inconsistent verdicts. Martinez is incorrect that there is no rational explanation for the jury's verdicts other than its wholesale rejection of Maria's testimony. To the contrary, there are any number of plausible explanations. It may very well be that the jury credited Maria entirely, but determined that only during one episode did the force she described rise to the level required for a conviction under § 2241(a)(1). Or perhaps the jury believed Maria's testimony beyond a reasonable doubt in some respects (that Martinez used force to accomplish the December 13 vaginal rape, and that he used threats or

fear to accomplish all of the rapes), but was less firmly convinced, by only a preponderance of the evidence, about other parts of her testimony (that he used force to accomplish the other four rapes)—a choice that could have rested on its conclusion that Martinez's use of force during the first vaginal rape was more solidly corroborated by her vaginal bleeding and the testimony of Maria's fellow inmates.  Or maybe the jury simply "believe[d] some parts and disbelieve[d] other parts of [Maria's] testimony," a choice that we have repeatedly stressed it is entitled to make.  *Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 95 (2d Cir. 2012) (quoting *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011)).  As Judge Weinfeld put it many years ago, "the maxim *falsus in uno, falsus in omnibus* is permissive and not mandatory."  *Calderone v. Naviera Vacuba S/A*, 204 F. Supp. 783, 789 (S.D.N.Y. 1962), *aff'd*, 325 F.2d 76 (2d Cir. 1963), *modified*, 328 F.2d 578 (2d Cir. 1964); *see also United States v. Ware*, 577 F.3d 442, 447 (2d Cir. 2009) ("The assessment of witness credibility lies solely within the

province of the jury, and the jury is free to believe part and disbelieve part of any witness's testimony . . . ." (quoting *United States v. Josephberg*, 562 F.3d 478, 487 (2d Cir. 2009)).  It is also possible that the jury used some other mode of reasoning entirely.  The narrow point is that while we will never know the jury's logic, there is no inherent contradiction among the verdicts here.  And the broader point is that this case illustrates precisely why courts are not in the business of comparing jury verdicts.

We accordingly deny Martinez's sufficiency challenge and affirm his convictions on Counts Four and Five.

## B.  Reasonableness of Sentence

The government cross-appeals, contending that the ten-year sentence of incarceration was both procedurally and substantively unreasonable.  We employ "a particularly deferential form of abuse-of-discretion review that we apply both to the procedures used to arrive at the sentence (procedural reasonableness) and to the length

of the sentence (substantive reasonableness)." *United States v. Davis*, 82 F.4th 190, 195–96 (2d Cir. 2023) (quoting *United States v. Broxmeyer*, 699 F.3d 265, 278 (2d Cir. 2012)).  For the reasons that follow, we agree with the government.

### i.   Procedural Reasonableness

"A district court commits procedural error where," among other things, it "rests its sentence on a clearly erroneous finding of fact," *United States v. Cavera*, 550 F.3d 180, 190 (2d Cir. 2008) (en banc), or "select[s] a sentence in violation of applicable law," *United States v. Crosby*, 397 F.3d 103, 114 (2d Cir. 2005).  "A finding of fact is 'clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Fisher v. Aetna Life Ins. Co.*, 32 F.4th 124, 136 (2d Cir. 2022) (quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985)).  In announcing its sentence, the district court made clearly erroneous factual findings,

misapprehended the law, and effectively failed to sentence Martinez based on all of his convictions.

First, the court mistakenly relied on factual findings that were precluded by the guilty verdicts—specifically, it erroneously accepted the defense's factual theory that Martinez and Maria had engaged in consensual sex on each charged occasion.  The court mused: "[T]o what extent do I impose a sentence that would be imposed if it was simply purely consensual and it was simply a ward situation[?]"  Gov't App'x 226.  It then explained that, in imposing sentence, it was "looking at this as a one count indictment, one count conviction," apparently disregarding Martinez's convictions for sexual abuse through threats or fear (and possibly also the two convictions based on forcible rape, though that is less clear).  *Id.* 201–02.  Indeed, in its written statement of reasons for selecting the sentence, the court said that it "should have granted" Martinez's motion for acquittal on all five of the threats-or-fear counts.  *Id.* 570.

But it is well settled that "a guilty verdict, not set aside, binds the sentencing court to accept the facts necessarily implicit in the verdict." *United States v. Hourihan*, 66 F.3d 458, 465 (2d Cir. 1995) (internal quotation marks and alteration marks omitted).  Here, the jury's finding, beyond a reasonable doubt, that Martinez caused Maria to engage in a sexual act using force (with respect to one rape) and threats or fear (with respect to all five rapes) forecloses the sentencing court's apparent view that Maria consented to the charged sexual acts.  *See* 18 U.S.C. §§ 2241(a)(1), 2242(1).  To be clear, all of those guilty verdicts stand: As discussed above, we have upheld Counts Four and Five against Martinez's sufficiency challenge, and Martinez has not appealed the other convictions.  It was therefore clear error for the district court to reach the independent factual conclusion, contrary to the guilty verdicts, that Maria had consented in any way to any of the charged sexual acts.  *Cf. United States v. Mumuni*, 946 F.3d 97, 109–10 (2d Cir. 2019) (holding that it was clear

error for the district court to "second-guess," at sentencing, whether a defendant who pled guilty to attempted murder actually had the intent or the capability to kill, because the court was bound by "the only legally permissible inference to be drawn from" the guilty plea).

Second, the district court mistakenly inferred that certain factual findings were dictated by the jury's acquittals on some counts. Specifically, it clearly erred in concluding that the jury necessarily rejected Maria's testimony that she was forcibly raped with respect to four of the charged episodes, and that the jury therefore rejected her testimony wholesale with respect to those events.

For one thing, a jury's acquittals on certain counts (regardless of their putative inconsistency with counts of conviction) cannot serve as the independent basis for any factual inferences, much less findings by a preponderance of the evidence, upon which a court may base its sentence. As the Supreme Court has explained, "an acquittal is not a finding of any fact"; it is merely "an acknowledgment that the

government failed to prove an essential element of the offense beyond a reasonable doubt." *United States v. Watts*, 519 U.S. 148, 155 (1997) (internal quotation marks, citation, and alteration marks omitted). That is why "the jury cannot be said to have necessarily rejected any facts when it returns a general verdict of not guilty." *Id.* (internal quotation marks and citation omitted). With the return of a general verdict, it is impossible to know anything more than the jury's bottom-line decision to acquit. *See Acosta*, 17 F.3d at 545. It is inappropriate for a sentencing court to speculatively conclude that the jury found or rejected a certain fact based on its verdict of acquittal, let alone to allow such conjecture to guide its sentence. *Watts*, 519 U.S. at 156.

We pause to note that, even if a sentencing court could permissibly draw inferences from a jury's acquittal (which it may not), the particular inferences that the sentencing court drew in this case were untenable. Here, the district court concluded that because

the jury acquitted on some counts charging forcible rape, it must have disbelieved Maria's testimony in its entirety with respect to those four rapes.  But that inference overlooks the fact that by convicting Martinez of all counts of sexual abuse by threats or fear, the jury necessarily credited Maria's testimony at least to the extent that she did not consent to Martinez's sexual acts and submitted due to her fear resulting from his express and implied threats of retaliation if she resisted.  As noted above, these guilty verdicts precluded the district court from finding that Martinez did not use threats or fear to accomplish the charged assaults.  *See Hourihan*, 66 F.3d at 465.

Moreover, the district court's conclusions were based on a fundamental misreading of the trial record.  According to the district court,  Maria testified that Martinez "just used force each time in order to have sexual relations with her," that her consent "wasn't caused by anything other than his physical strength and his ability to rape her," Gov't App'x 200, and that this "wasn't a case where [Maria] said I was

caused to do this because I was in fear of threats or force . . . .  What

motivated her throughout this was that [he was] essentially forcing

her . . . . ," *id*. 238; *see also id*. 203 ("Could you show me where she said

that the reason that I acquiesced, or she didn't acquiesce so she

wouldn't have even said that, but the reason that I had sexual

relations with him was because he threatened [me?]"); *id*. 537 (PSR)

("[T]he victim did not testify that she consented to have sexual

intercourse with the defendant because of threats or fear."); *id.* 570

(statement of reasons) (same).

Contrary to the district court's view, Maria repeatedly testified

that Martinez threatened her with harmful consequences if she

resisted his advances or reported him to prison authorities, that his

threats succeeded in intimidating her, and that these fears dissuaded

her from fighting back or taking other actions to stop the abuse. Maria

testified that immediately after the first two rapes, Martinez told her

not to "talk to anybody[] because [she] was going to have

problems[,] . . . implying that [she] was going to go to the SHU if [she] spoke to anybody" or that she would have "to do more time in jail," *id*. 60–61, fears that she expressed to her fellow inmates (and which the inmates confirmed that she had voiced). She testified that, as a result, she was fearful during each subsequent rape "[t]hat [she] was going to have to spend more time in jail" and "[t]hat [she] was going to end up in the SHU." *Id*. 80. At one point, Martinez warned her that if she fought back, she could go to prison for five years for assaulting an officer. Martinez also told her that another inmate was about to be released because "she didn't say anything," which Maria interpreted to mean that the inmate "remained silent . . . about what had happened with the officer," *id*. 45, 61, presumably meaning some wrongdoing by the officer. She did not report Martinez's inappropriate sexual comments because she "didn't want any problems," *id*. 46, and most significantly, did not refuse to go when Martinez summoned her to clean his office because she understood

43

that if she refused, she would be put in the SHU.  The district court's findings to the contrary, memorialized in paragraph 22 of the amended PSR, and later in its statement of reasons, were clearly erroneous.[8]

In short, even if the jury's guilty verdicts had not already conclusively established that Martinez used threats or fear to commit sexual abuse, it was still a dramatic misreading of the record to conclude that Maria never testified to that effect.

Third, the district court's factual finding that Martinez was "not a violent criminal," *id.* 226, was also clearly erroneous.  The jury found Martinez guilty of raping Maria by force, an indisputably violent crime.

Fourth, the district court based its sentence on a misapprehension of law—namely, that Martinez's convictions for

---

[8] Accordingly, the district court would have committed error if it had granted a judgment of acquittal on the counts of sexual abuse based on threats or fear, which it indicated in its statement of reasons that it regretted not having done.

sexual assault by threats or fear were functionally equivalent to his convictions for sexual abuse of a ward.  The court's discussion on this score was confusing, at one point misdescribing Martinez's use of threats to engender fear as merely one way to induce consent.  *See id.* 537.  But sexual abuse by threats or fear, by definition, does not involve the victim's consent in any way.  As the court instructed the jury, Martinez would be guilty of sexual abuse by threats or fear if he, among other things, "caused the victim to engage in a sexual act . . . by threatening the victim or placing the victim in fear."  *Id.* 397–98.  That standard effectively requires conduct by the defendant that is contrary to the will of the victim.  Such a requirement is quite different from sexual abuse of a ward, for which the court instructed the first jury: "the defendant caused the victim to engage in a sexual act . . . *even if the victim consented to the act*."  *Id.* 469–70 (emphasis added).  It is unclear precisely what the district court meant when it described the threats-or-fear offenses as involving "a kind of forced

consent, not by physical force, but by threat of force." *Id.* 201.  Perhaps the court was simply referring to a situation where a victim acquiesces to sexual assault under duress, rather than providing what the law regards as "consent."  Yet the court unmistakably, and erroneously, treated the threats-or-fear convictions as functionally equivalent to those for sexual abuse of a ward, even though those two crimes are distinct.

All of these errors of fact and law culminated in the district court essentially disregarding certain of Martinez's convictions and thereby not fully appreciating the scope and gravity of his criminal conduct.  A district court's failure to consider all of a defendant's convictions when determining his sentence is error; a court may not pick and choose which convictions it agrees with and sentence a defendant as if he had been convicted only of those crimes.  *See Hourihan*, 66 F.3d at 465 ("[T]he district court's decision to sentence defendant for a lesser crime [than his crimes of conviction] cannot be

sustained.").  Instead, a sentencing court must accept all of the jury's guilty verdicts that have not been properly set aside when determining an appropriate sentence.  Doing otherwise fails to accord due respect to the jury's constitutionally established role.

At bottom, a drastic "variance such as that imposed here . . . must be based on an accurate reading of the record." *United States v. Singh*, 877 F.3d 107, 118–19 (2d Cir. 2017); *United States v. DeSilva*, 613 F.3d 352, 358 (2d Cir. 2010) (holding that a district court commits procedural error when it "select[s] a sentence based on a clearly erroneous fact" (internal quotation marks and citation omitted)).  Here, it was not.  Accordingly, we conclude that the district court committed procedural error by resting its sentence on clearly erroneous factual findings, relying on a misapprehension of law, and failing to sentence Martinez based on all of his convictions, leaving us "with the definite and firm conviction that a mistake has been committed." *DeSilva*, 613 F.3d at 356; *see Hourihan*, 66 F.3d at 465

47

("[T]he district court's decision to sentence based on its view of the evidence rather than the jury's is reversible error.").

## ii.    Substantive Reasonableness

Although procedural error is a sufficient basis to remand for resentencing, *see Cavera*, 550 F.3d at 190, we may also assess the substantive reasonableness of a sentence where appropriate.  *See Singh*, 877 F.3d at 116–22 (concluding first that the district court's sentence was substantively unreasonable before concluding that the district court also committed procedural error when choosing the sentence).  We exercise that discretion here.

When reviewing the substantive reasonableness of a sentence, "we will set aside 'only those sentences that are so shockingly high, shockingly low, or otherwise unsupportable as a matter of law that allowing them to stand would damage the administration of justice.'" *United States v. Muzio*, 966 F.3d 61, 64 (2d Cir. 2020) (quoting *Broxmeyer*, 699 F.3d at 289).  "The particular weight to be afforded

aggravating and mitigating factors [under 18 U.S.C. § 3553(a)] is a matter firmly committed to the discretion of the sentencing judge, with appellate courts seeking to ensure only that a factor can bear the weight assigned it under the totality of circumstances in the case." *Broxmeyer*, 699 F.3d at 289 (internal quotation marks and citation omitted). "[A] significant departure or variance from the recommended Guidelines range 'should be supported by a more significant justification than a minor one.'" *Mumuni*, 946 F.3d at 107 (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). "While district courts have broad discretion at sentencing, this discretion is not unlimited. Not only must district courts abide by specific procedural requirements, but they must faithfully evaluate the record to ensure that the sentence imposed accurately and adequately reflects the seriousness of the offense conduct." *Id.* at 106. The sentence here fails to meet that standard, for two reasons.

First, the district court "drastically discounted the seriousness of [Martinez]'s offense conduct based on a sterilized and revisionist interpretation of the record." *Id.*  The court made numerous comments, discussed previously, that, in concert, demonstrate that it effectively ignored many of Martinez's counts of conviction and substantially undervalued the severity of his offense conduct.  The court effectively disregarded Martinez's convictions for forcible rape and rape by threats or fear, viewing the case as "simply a ward situation," Gov't App'x 226, in other words, that Maria and Martinez had engaged in consensual sex acts that were criminal only because he was a guard and she was an inmate.

But what the jury found beyond a reasonable doubt went far beyond "a ward situation."  The jury found that Martinez engaged in far more egregious conduct.  He used physical force on at least one occasion, and threats—which were particularly powerful in light of his position of authority—on five occasions to engage in sexual

activity with Maria.  He abused his position of authority over an inmate in his charge to place her into a setting where he could violently, and serially, overbear her will and rape her without fear of detection.  He instilled fear in Maria not only by demonstrating that he was willing and able to use physical force against her by forcibly raping her during their first sexual encounter, but also by threatening to use his power to lengthen her time in prison, subject her to punitive conditions of detention, and have her investigated for assaulting an officer if she ever tried to fight back.  And he manipulated that fear to coerce her into making herself available for repeated instances of unwanted sexual intercourse.

The district court's substantive error in evaluating the seriousness of the offense seems to have flowed from its procedural error described above—namely, functionally treating this as a case involving only (or at least, primarily) sexual abuse of a ward, rather than rape by means of physical force and threats.  In sum, the district

court erred by not appreciating the true nature of the offense of conviction.  That error resulted in a sentence that was too low to adequately reflect the seriousness of the crimes for which Martinez was actually convicted by the jury.  What we have said elsewhere applies fully here:

> We are confident that if the District Court had fully appreciated the heinous nature of this offense . . . it would have reconsidered the weight ultimately accorded several aggravating factors, such as: (1) the nature and circumstances of the offense; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for the sentence imposed to afford adequate deterrence to criminal conduct; and (4) the need to protect the public from further crimes of the defendant.

*Mumuni*, 946 F.3d at 110.

Second, the district court improperly considered as a mitigating factor its personal belief that Maria's testimony was not credible.  The court noted that it found parts of Maria's testimony "troubling," Gov't App'x at 215, opined that Maria was not of the "highest moral character and . . . [has] problems," *id.* at 217, and made clear at several

52

points that it did not believe Maria's testimony, *see id.* 218 ("I am concerned about whether false testimony was given by the complainant . . . ."); *id.* 221 (noting its "qualms about her credibility"); *id.* 227 ("I'm concerned about [Maria's] veracity as a witness."); *id.* 240 (observing that Maria's testimony "sounded awfully" similar to the story she told about being sex trafficked when applying for a visa). And it noted in its statement of reasons that it "found many aspects of [Maria's] testimony about the circumstances under which she had sexual intercourse with the defendant not credible, and [that it] considered this in fashioning the ultimate sentence in this case." *Id.* 569. Setting aside whether the district court's generalized disbelief of Maria's testimony was unfounded, its doubts about facts necessarily established by the jury's convictions were not permissible considerations at sentencing. *Cf. United States v. Fernandez*, 104 F.4th 420, 425–27, 429–33 (2d Cir. 2024) (reversing a district court's grant of a sentence reduction under 18 U.S.C. § 3582(a)(1)(A), which was

based in part on a "certain disquiet" about the jury's guilty verdict, and holding that a defendant's claim of "potential innocence" must be viewed as an attack on the validity of the conviction, which is cognizable only under 28 U.S.C. § 2255).

In sum, the district court's assignment of dramatically insufficient weight to the seriousness of *all* the offenses of which Martinez was convicted, and its treatment of its personal disbelief of Maria's testimony (and hence of Martinez's guilt) as a mitigating factor, render the sentence substantively unreasonable. We therefore conclude that this "far-below-Guidelines sentence was outside the bounds of what was reasonable in light of the facts and circumstances of this case." *United States v. Ceasar*, 10 F.4th 66, 87 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 2841 (2022). The case is accordingly remanded to the district court for resentencing consistent with this opinion.

## III.   Conclusion

As we have previously held, "[a] guilty verdict, not set aside, binds the sentencing court to accept the facts necessarily implicit in

the verdict." *Hourihan*, 66 F.3d at 465 (internal quotation marks omitted).  The district court did not do so here.  It procedurally erred by inappropriately crediting the defendant's version of events even though the jury necessarily rejected that account in returning its guilty verdicts; mistakenly determining that it was obliged to infer certain facts from the jury's acquittals on different counts; misapprehending the legal nature of the defendant's convictions for sexual abuse through threats or fear; and effectively failing to sentence him based on all of his counts of conviction.   And its sentence, which was substantially lower than the advisory Guidelines range, was substantively unreasonable because it dramatically undervalued the seriousness of the full range of the defendant's offenses and impermissibly treated the court's lingering doubts about the jury's guilty verdicts as a mitigating factor.  We cannot allow such a sentence to stand, as doing so "would damage the administration of

justice." *Ceasar*, 10 F.4th at 79 (internal quotation marks and citation omitted).

In sum, we hold as follows:

(1)    Maria's testimony that Martinez physically held her down to accomplish the first rape, which the jury was entitled to credit, amply supported Martinez's convictions on Counts Four and Five, for aggravated sexual abuse by force, in violation of 18 U.S.C. § 2241(a)(1), and deprivation of civil rights, in violation of 18 U.S.C. § 242.  The jury's acquittal of Martinez on other counts cannot be invoked to impugn the guilty verdicts.

(2)    Martinez's ten-year sentence of incarceration is both procedurally and substantively unreasonable.

We therefore AFFIRM the judgment of conviction, ORDER that paragraph 22 of the PSR be stricken, and REMAND for resentencing consistent with this opinion.

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

57